BARBARA BALLOU *vs.* CLARENCE H. WILLEY.

Suffolk.    January 7, 1902. — February 28, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Pleading*, Declaration.    *Auditor's Report.    Wagering Contracts.*

In an action of contract under St. 1890, c. 437, § 2, for payments made upon wagering contracts, counts following the language of the statute may be joined with a count upon an account annexed enumerating the payments.

In an action under St. 1890, c. 437, § 2, for payments made upon wagering contracts, it is proper for the declaration to follow the language of the statute alleging the substantive facts necessary to a recovery, and it would be bad pleading to set out the circumstances from which those facts might be deduced.

When an auditor's report does not purport to state in detail all the evidence introduced at the hearing before him, his finding upon a question on which he has reported some evidence on both sides justifies a trial justice in refusing a ruling on the ground that the finding of the auditor on this point was correct.

In this action under St. 1890, c. 437, § 2, for payments made upon wagering contracts, the evidence, consisting of an auditor's report finding for the plaintiff, with the special circumstances of the case reported by the auditor, and the failure of the defendant to produce any evidence, justified a refusal to rule that the plaintiff could not recover.

CONTRACT, under St. 1890, c. 437, § 2, for payments alleged to have been made upon wagering contracts, with three counts, the first two following the language of the statute and the third on an account annexed setting forth the different payments, each count being for the amount of $18,929.27. Writ in the Supreme Judicial Court dated June 7, 1901.

The defendant demurred, alleging, among other grounds of demurrer, that the first two counts being under the statute and the third at common law could not be joined, and that the

declaration did not contain any description of the securities and commodities alleged to have been the subject of purchase and sale. *Hammond*, J. overruled the demurrer and the defendant appealed. The case was sent to Marcus Morton, Esquire, as auditor, and later was heard by *Hammond*, J., upon the auditor's report. The defendant requested the following rulings, the rulings and portions of rulings which the justice refused to give being enclosed in brackets:

1. In order to recover the plaintiff must prove both that she did not intend to perform any or all of the contracts entered into by her with or through the defendant by the actual receipt and delivery of the stock and the payment of the price, and that the defendant had reasonable cause to believe that no such intention to actually perform on her part existed.

2. The reasonable cause for belief in the mind of the agent or other party to the contract, upon which the plaintiff's right of recovery under the statute is made to depend, is that which [creates a certainty of conviction and directs the understanding; that which satisfies a careful and mature judgment.] Facts which create a mere doubt or suspicion are not enough.

[3. There is no sufficient evidence that the defendant had this reasonable cause for belief that the plaintiff did not intend to perform her contracts and she cannot recover.]

4. It is not enough that the evidence furnishes ample cause for the belief on the part of the defendant that the plaintiff did not intend to carry out and complete her contracts. The finding by the auditor that there was such ample cause will not warrant the finding by this court that the cause for belief was reasonable, [and the plaintiff cannot recover.]

[5. From the finding of the auditor that the plaintiff was to receive a proportion of certain commissions and supposed that they were allowed to her by the defendant, the defendant was a partner of the plaintiff and not her agent or the other party to the contract, and she cannot recover.]

[6. Upon all the evidence as a matter of law the plaintiff cannot recover.]

Upon these requests and upon the evidence the justice ruled and found as follows:

" I give the first request. The second request I have modified as follows:

" The reasonable cause for belief in the mind of the agent or other party to the contract, upon which the plaintiff's right of recovery under the statute is made to depend is that which satisfies the judgment of a man of ordinary care and capacity. Facts which create a mere doubt or suspicion are not enough. I decline to give the fifth and sixth. The fourth I give omitting the words at the end thereof 'and the plaintiff cannot recover.' There is something else in this case outside of the auditor's report. I take into consideration in my finding, the fact that there is no evidence on the part of the defendant. The result is that the first is given as it stands, the second and fourth as modified by me, and I decline to give the third, fifth and sixth. And having made these rulings I find for the plaintiff in the sum named by the auditor."

The defendant alleged exceptions to the refusals to rule and to the ruling made in regard to the absence of evidence on the part of the defendant.

The auditor's report was as follows:

The suit was brought by authority of St. 1890, c. 437, to recover certain sums of money paid by the plaintiff to the defendant on account of contracts to buy and sell stocks upon credit and margin.

The plaintiff appeared and testified. The plaintiff summoned the defendant by serving a subpœna *duces tecum* at "his last and usual residence," requesting the production of his books. The defendant did not appear and no books were produced.

The evidence, which consisted mainly of the testimony of the plaintiff, and checks, receipts and memoranda of the transactions in question, was in substance as follows:

The plaintiff entered into business relations with the defendant in January, 1901, through a Mrs. Porter who had charge of an exchange on Winter Street in Boston, maintained for the purpose of enabling women to watch the stock market and to speculate thereon. The exchange was connected by telephone with the defendant's place of business. Subsequently Mrs. Porter gave up her room on Winter Street and moved to Tremont Street and then to The Copley. At these latter places she had " living " rooms, not an exchange. She, however, maintained a ticker and kept in telephonic communication with the defendant's office.

The plaintiff, at the suggestion of Mrs. Porter, began to speculate by buying and selling stocks on margins through the defendant, the amount necessary for the margins being at first supplied by or through Mrs. Porter. On January 18 the plaintiff herself began to make payments by check or in cash to protect the stocks which she was buying and selling on margin and from that time until May 5, 1901, during which period she bought and sold on margin many hundred shares, she paid the defendant $11,475.

" The checks, the receipts given by the defendant, and the plaintiff's uncontradicted testimony, prove beyond question that the defendant received all these amounts either directly or through Mrs. Porter. The testimony of the plaintiff satisfies me and I find that the amounts were paid by the plaintiff as margins to protect the stocks; that she never intended to receive or deliver the stock which she ordered to be bought or sold; that in all the transactions she never received or delivered any stock, but that all the transactions were wagering contracts within the meaning of the statute."

The evidence showed that the defendant, under the name of " Morton & Co.," ran an exchange for stock transactions. In the transactions with the plaintiff he bought and sold many hundred shares of stock for her without delivering or receiving certificates. He acknowledged in writing the receipt of $8,700 from the plaintiff " for margins " on shares " long" and " short." On or about May 3 he gave a written statement to the plaintiff of transactions involving sixteen hundred shares of various stocks, some of which, as the statement showed, were to be delivered to the plaintiff, and others to be received from her, and upon all of which "deposits" had been made. As has been stated, none of these stocks nor those bought and sold by the defendant on margin for the plaintiff before this statement, had ever been delivered by him to the plaintiff or received from her.

" The evidence, taken in connection with the failure on the part of the defendant to offer any evidence, satisfies me and I find that he had ample cause to believe that the plaintiff had no intention, during these business relations, of actually receiving or delivering any of the stock bought or sold."

The defendant offered in evidence a receipt signed by the

plaintiff, for "certificate 385, for one hundred shares Colorado Southern common," dated February 15, 1901, and contended that it tended to prove that every transaction before its date was a legitimate one, and that the plaintiff having signed it was precluded from denying that the transactions previous to its date were not on margins.

The receipt was as follows: "Boston, February 15, 1901. Messrs. Morton & Co., Boston, Mass. Gentlemen: Enclosed please find certificate 385 for one hundred shares of Colorado Southern common, which I desire you to place to my credit as collateral security. The same belongs to me and I have a good right to sell and assign the same; and, in accordance with the usual custom, I therefore authorize you to sell or assign the same and borrow upon or use the above or any other collateral security belonging to me in your possession or control, without further notice, in all transactions with you, whether the same have been or shall be authorized by orders given to you, in writing, orally, by telephone or by telegraph, for the purchase or sale of stocks, bonds or commodities. I hereby agree that I will make no contract with you for the purchase or sale of stocks, bonds or commodities unless I have full intention to complete such contract by the actual receipt and delivery of the securities so ordered to be bought and sold; and I acknowledge that all contracts heretofore made for such purchases and sales have been made with the intention to complete the same by such actual receipt and delivery of the securities. Name — Barbara Ballou. Address — Hotel Bellevue. (This is to be returned to Morton & Co.)"

The plaintiff testified that she bought the Colorado Southern stock outright because the defendant told her it was necessary, the price of the stock being so low; that she did not remember that the certificate was actually given to her; and that she signed the receipt without knowing its contents and that the statement in the receipt, that all contracts made before its date were made with the intention to complete them by actual receipt and delivery was not true.

"So far as the question is one of fact, I find that the receipt does not tend to prove the legitimacy of the transactions before its date. The acknowledgment by the plaintiff that contracts

made by her were legitimate cannot make them legitimate, when they are shown to be illegitimate by the whole course of dealings. Legitimacy of transactions is not determined by agreement or statements of parties. Such a receipt tends rather to prove that illegitimate contracts were being made and not legitimate ones. Its whole tenor shows that it was designed to protect as far as possible from the effect of the statute, those dealers who contemplated engaging in an illegitimate business. Even assuming that the plaintiff knew the contents of the receipt, she would not be precluded from denying the true nature of the transactions, in view of the fact that the defendant himself gave character to the transactions. If he had any right to enforce the receipt against the plaintiff, he certainly waived that right by his own actions before and after its date."

The defendant contended, that the relations existing between the plaintiff, the defendant and Mrs. Porter were such as to preclude the plaintiff from recovering. The plaintiff allowed Mrs. Porter to use some of the plaintiff's furniture in her rooms on Tremont Street and Copley Square, and she was often present at those rooms. It was understood that the plaintiff and Mrs. Porter were to receive between them one half of some commissions charged by the defendant, but for what did not appear. The plaintiff did not actually receive any of those commissions. She supposed that they were allowed her by the defendant in her account with him, but there was no proof that they were so allowed. No account was ever rendered to her.

"The evidence failed to satisfy me that the relations between the parties were such as to make the plaintiff a partner with the defendant, or as to preclude her from recovery in this action."

The auditor found for the plaintiff in the sum of $11,683.02, with interest from the date of the writ.

*H. H. Pratt*, for the defendant, submitted a brief.

*H. W. Ogden*, for the plaintiff.

BARKER, J. 1. The demurrer to the declaration was rightly overruled. The counts which cite the statute and that on an account annexed each sound in contract and therefore may be joined. Pub. Sts. c. 167, § 2, cl. 5. The first and second counts follow the statute and state the substantive facts necessary to a recovery under St. 1890, c. 437, § 2. To set out the circum-

stances from which those facts might be deduced was unnecessary and would have been bad pleading. *Woodbury* v. *Jones*, 3 Gray, 261. *Willard* v. *Williams*, 7 Gray, 184. See *Taunton* v. *Caswell*, 4 Pick. 275; *Coolidge* v. *Learned*, 8 Pick. 504, 511. The other grounds taken in the demurrer have not been argued.

2. The justice was not obliged to find or to rule that the plaintiff and the defendant were partners. The auditor's report does not purport to state in detail all the evidence introduced at the hearing before him. Although the circumstances that the plaintiff was to receive a proportion of certain commissions and that she supposed that they were allowed to her by the defendant tended to show a partnership, there was evidence in the other direction stated in the auditor's report, and he in effect found that there was no partnership. The finding of the auditor, for the plaintiff, and the evidence stated in it justified the justice in refusing to give the ruling that the plaintiff could not recover on this ground. See *Holmes* v. *Hunt*, 122 Mass. 505, 515, 516, and cases cited.

3. The general finding for the plaintiff by the auditor necessarily involved a finding on his part that the defendant had reasonable cause to believe that the plaintiff did not intend to carry out and complete her contracts, and this was in no way weakened in considering the weight of the report as evidence by the auditor's specific finding that the defendant had ample cause for that belief. Many of the special circumstances stated by the auditor tend strongly if unexplained in the same direction. Maintaining an "exchange" on a shopping street for the purpose of enabling women to watch the stock market and to speculate thereon; telephonic communication between "living" rooms in which was a "ticker" and the defendant's office; the general course and extent of the dealing between the parties and the receipt of February 15, 1901, were some of these circumstances. Such "exchanges" and "living-rooms" and receipts anxiously certifying to the intention of one party to a stock contract may be considered fairly, if unexplained, as trade tools or appliances justifying in such a case as the present such inferences as are drawn in another class of cases from the use of beer-pumps or the possession of liquor glasses containing heel-taps. When the case came to its final trial with such an auditor's report on file

and the defendant limited his defence to requests for rulings of law, the fact that there was no evidence from him or on his part might be taken into consideration, and with the auditor's report justified the rulings and findings and the refusals to rule to which the defendant excepted. In our opinion the case was not like those in the long list of decisions cited upon the defendant's brief, like *Denny* v. *Williams*, 5 Allen, 1, 5, in which there was no sufficient evidence to justify a finding for the plaintiff, nor was it like *Smith* v. *First National Bank in Westfield*, 99 Mass. 605, one where all the evidence tended as much to support the proposition which the plaintiff must show to be wrong as that which she must maintain in order to recover.

*Exceptions overruled.*