## LENA MARKS *vs.* METROPOLITAN STOCK EXCHANGE.

Suffolk.   March 10, 1902. — April 4, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Wagering Contracts.   Evidence.*

*Semble,* that in an action under St. 1890, c. 437, for payments made on wagering contracts, a plaintiff's testimony that " she meant to buy the stock on margin " and that " she did n't mean to buy it outright, but just to speculate " imports a real transaction and not a wager.

In an action under St. 1890, c. 437, for payments made on wagering contracts, if it appears that the plaintiff put money into the hands of her husband, expecting him to speculate with it in actual transactions by employing a broker to buy stock for her and carry it on a margin and that the stock should be received and paid for, but left the whole matter to her husband, and her husband entered into a transaction with the defendant which both of them knew to be a wager under the guise of a purchase and sale, there is evidence that the plaintiff had no intention to perform the contract in question and that the defendant had reasonable cause to believe that no intention to perform existed; and testimony of the plaintiff that she intended her husband to enter into an actual transaction is immaterial, such intention not having been disclosed to the defendant.

In an action under St. 1890, c. 437, for payments made on wagering contracts, it appeared, that the plaintiff, through her husband as agent, made a contract which purported to be for the purchase and sale of a certain stock, that no stock was in fact delivered under the contract, and that the contract was terminated by the fall of the market price of the stock to a point where by the terms of the contract the plaintiff's deposit of cash was forfeited and became the absolute property of the defendant. *Held,* that this was a " settlement " within the meaning of § 4 of the statute and under that section was prima facie evidence that the plaintiff had no intention to perform the contract and that the defendant had reasonable cause to believe that she had no such intention.

CONTRACT, under St. 1890, c. 437, for $400 alleged to have been paid upon contracts for the purchase of stock which the plaintiff had no intention to perform and which the defendant had no reasonable cause to believe the plaintiff intended to perform.   Writ dated May 18, 1901.

At the trial in the Superior Court before *Hardy,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*G. F. Ordway,* for the defendant.

*C. W. Rowley,* for the plaintiff.

LORING, J.   The transaction which the husband of the plaintiff testified that he entered into with the defendant corporation

in her behalf is the typical transaction aimed at by the first clause of the second section of St. 1890, c. 437.

He testified that he went to the defendant's office and, through one Nichols, whom he met there, paid to the defendant $200 and received from it a contract whereby the defendant promised "on three days' notice" to deliver to Nichols twenty shares of the stock of the United States Steel Company " at 53 1-4 and the holder of this contract agrees to receive the same; or upon surrender by mutual consent of this contract said corporation agrees to pay the holder of it a sum equal to the then advance in the market price of said commodity or stock. All deposits shall become the absolute property of said corporation to the amount of the decline in the market value of said commodity or stock when this contract is closed, either by further order of the holder, or when the decline in the market value of said commodity or stock shall equal the sum of all deposits, whereupon this contract terminates." In addition to the $200 deposited by the plaintiff's husband when the contract was made, he deposited a second $200 a few days later. When the contract was produced in court, there were entered on the left hand margin the two sums of $200 under the heading " Deposit "; and on the right hand margin of the contract, under the heading " Order limit " and opposite the first deposit of $200, there was entered " 43 1-4," and opposite the second deposit, " 33 1-4." That means that on payment of the first $200 the plaintiff was protected until the price of the stock of the United States Steel Company fell to $43.25 a share, and, when the stock of that company declined so as to reach that price, the plaintiff forfeited all the deposits, under the clause of the contract providing that " all deposits shall become the absolute property of said corporation to the amount of the decline in the market value of said . . . stock when this contract is closed, . . . or when the decline in the market value of said . . . stock shall equal the sum of all deposits." And so, on payment of the second $200, the plaintiff was protected until the stock fell to $33.25 a share, and on the price of the stock falling to that amount all deposits were forfeited, by the term of the contract stated above. This contract was spoken of in the testimony of the plaintiff's husband as a " ticket." Later, the plaintiff's husband came to the office of the defendant with another

$300, and on entering the office heard that " the stock was going down "; and although he tried to reach the counter, he was prevented from doing so by the crowd, and when he reached the counter he was told that he was too late, that he was " wiped out," and the man behind the counter refused to take his money and " the stock went down to 24, and in about two seconds rose again to 32."

Nichols, through whom the plaintiff bought the ticket in question, when asked what became of the " deal," testified that " it expired and the market ran out." He characterized the contract which we have spoken of as a " long ticket," and, on being asked what he did with the $200 handed him by the plaintiff's husband, he testified that he put it in stocks, according to the contract which has been referred to, and that he could not tell " whether it was a short ticket or a long one." And, finally, in describing the commission to be paid to him for his services, he testified that he was to receive "one dollar on twenty shares, from Mr. Marks, if he won."

The transaction testified to by the plaintiff's husband, and by Nichols, is plainly a device to make a wager under the guise of a contract for the purchase and sale of shares of stock; if the price of the stock of the United States Steel Company fell below thirty-three and one quarter, the price to which the holder of the long ticket was protected by payment of $20 a share margin, the plaintiff lost; if it rose above the price named, fifty-three and one quarter, before it fell below thirty-three and one quarter, he won, and, by calling for fulfilment of the contract, could collect his winnings. The terms of the contract put in evidence contemplate a wager, and the language of both witnesses throughout is the language of a wager and not of a real transaction. *Ballou* v. *Willey*, 180 Mass. 562.

The defendant's answer to this is that on the plaintiff's own testimony a real transaction was intended by her. She testified that " she meant to buy the stock on margin." It is true that the statement that "she meant to buy the stock" imports a real purchase of stock, and we are of opinion, for the reasons hereinafter stated, that the natural import of these words is not done away with by the addition of the words " on margin." The plaintiff also testified that " she did n't mean to buy it outright,

but just to speculate." The statement that a customer employs a broker to buy stock for him and carry it on a margin imports that the stock shall be actually bought and actually received by the broker; and if, in such a case, the stock is actually bought and actually received by the broker, the transaction is not within St. 1890, c. 437. *Rice* v. *Winslow*, 180 Mass. 500. Where a customer employs a broker actually to buy stock and carry it on a margin, the transaction would be properly described as one where the customer " did n't mean to buy it outright, but just to speculate"; and we are of opinion that the defendant is right in its contention that this testimony imports a real transaction, that is to say, imports that the plaintiff did have an intention to have her husband receive the stock which she empowered him to buy, or to have that stock received in her behalf by some person employed by her husband to buy it in her behalf. If the plaintiff had told the defendant what she testified was in fact her intention and that was all the evidence in the case, there would be no evidence that the plaintiff had no intention to have the stock received from the purchaser. But, in a suit against the person of whom the stock was bought, the question whether the plaintiff intended to receive the stock or have her husband receive the stock within the first clause of St. 1890, c. 437, § 2, is not a question of her undisclosed mental determination nor her intention as disclosed to her agent, but her intention as disclosed to the person from whom she seeks to recover under that act.

There is nothing in *Crandell* v. *White*, 164 Mass. 54, to the contrary. In that case there were two causes of action on trial; one against Wonson, who was employed to buy stock for the plaintiff, and one against White, of whom the stock was bought. Wonson was called as a witness by the plaintiff, and under a general objection by the defendant White but without objection by Wonson, was allowed to testify that " he had no intention of paying the full amount of $4,950 personally, nor did he have any idea of paying out the first $100, because it was not his property; and that he had no intention at any time of taking 100 shares of the stock as for himself personally." No objection was made by Wonson. The court held that as against Wonson it was competent to show that he had no intention to perform the purchase, and " if White wished the testimony to be limited to its

effect as against Wonson himself, assuming that it should have been so restricted, he should have requested the court so to limit it." In the action against Wonson the issue properly was whether the plaintiff had no intention that the contract to be made by Wonson in his behalf should be performed, and whether Wonson had reasonable cause to believe that she had no such intention.

The testimony of the plaintiff in the case at bar that she intended her husband to enter into a real transaction is immaterial; she left the whole matter to her husband and he entered into a transaction which imported that there was to be no real purchase and sale, but a wager under the guise of a purchase and sale. In such a case, we are of opinion that there was evidence that the plaintiff had no intention to receive the stock which she contracted to buy. As we have said, the intention referred to by the statute is not the undisclosed intention of the plaintiff, but the plaintiff's intention as disclosed by the transaction entered into, by acts done in pursuance thereof, which are competent as evidence of the plaintiff's intention "at the time of the contract," or by any other acts by which her intention is disclosed to the defendant. We are therefore of opinion that in the case at bar there was evidence that the plaintiff had no intention to perform, and that the defendant had reasonable cause to believe that she had no intention to perform, the contract in question.

We are also of opinion that, apart from this, there was evidence in the case at bar of no intention to perform on the part of the plaintiff, and reasonable cause to believe, on the part of the defendant, that there was no such intention to perform by the plaintiff. It was proved that no stock was in fact delivered under the contract made by the plaintiff, through her agent, with the defendant, and that the contract was terminated by the decline in the market value of the stock to the amount of $400 and more, in which case, by the terms of the contract, all deposits made by the plaintiff became the absolute property of the defendant. In our opinion, this was a "settlement" within § 4 of St. 1890, c. 437, and is prima facie evidence that the plaintiff had no intention to perform and that the defendant had reasonable cause to believe that she had no intention to perform.

*Exceptions overruled.*