FRED E. THOMPSON *vs.* EDWARD BRADY.
JOHN J. SULLIVAN *vs.* SAME.

Suffolk.   November 12, 1902. — November 25, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Wagering Contracts.*

In this action under St. 1890, c. 437, § 2, (R. L. c. 99, § 4,) for margins paid on wagering contracts, the evidence described by the court was held to be amply sufficient to justify a verdict for the plaintiff.

The provision of St. 1890, c. 437, § 4, (R. L. c. 99, § 6,) that "the fact that settlements had been made" on transactions alleged to be wagering contracts shall be prima facie evidence of an intention not to perform the contracts by actual receipt and delivery, includes settlements in the transactions sought to be repudiated under the act, if it is not confined to such settlements.

That agreements for the purchase and sale of securities alleged to be wagering contracts under St. 1890, c. 437, § 2, (R. L. c. 99, § 4,) are marked "protect in full" does not tend to show that the securities are to be actually received and delivered, but only means that the stock shall not be sold out and that the margin will be kept good until further orders.

Two actions by different plaintiffs against the same defendant under St. 1890, c. 437, § 2, (R. L. c. 99, § 4,) for margins paid on wagering contracts. Writs dated May 25, 1901.

In the Superior Court the cases were tried together before *Sherman,* J. The judge refused to order verdicts for the defendant, and the jury returned a verdict for the plaintiff in each case, in the first case in the sum of $944.35, and in the second case in the sum of $1,042.68. The defendant alleged exceptions.

*W. P. Foster & L. G. Dennett,* for the defendant, submitted a brief.

*L. M. Friedman, (P. M. Hubbard* with him,) for the plaintiffs.

Holmes, C. J. These are actions to recover margins paid in wagering stock transactions. St. 1890, c. 437, § 2. (R. L. c. 99, § 4.) They were tried together and at the trial the defendant asked the court to direct a verdict in his favor, and excepted to the refusal. The only question before us is whether there was any evidence that the plaintiffs at the time of contract had no intention to perform the same by the actual receipt or delivery of the stock and payment of the price, and if they had not, that the defendant had reasonable cause to believe that no such intention existed. We do not perceive what inducement except delay the defendant can have had to bring that question here. It appeared that the plaintiffs had paid the sums sought to be recovered as margins, and, by the plaintiffs' express testimony, that they did not intend to complete the transactions by actual receipt and delivery of the certificates dealt in. It appeared also, by the testimony of the defendant's agent, that he understood that the plaintiffs supposed that they were dealing on margin, and that that was the way in which he was dealing with them. He explained dealing on margin as a gambling transaction as distinguished from a legitimate one where you pay for something and get something. Of course the agent's knowledge in connection with the business concerned was the defendant's knowledge. *Suit* v. *Woodhall,* 113 Mass. 391. If these facts were not enough, as very clearly they were, the transactions were not completed in fact, and that is made prima facie evidence by the statute. § 4. The defendant's counsel

construed the words " the fact that settlements had been made " as referring to previous settlements.   We construe them as embracing, if not confined to, settlements of the transactions concerned, as is made plainer by the amendatory act.   St. 1901, c. 459, § 2.   R. L. c. 99, § 6.   Finally, the defendant himself knew of the dealings and never instructed his agent to ask for or to make deliveries of the stocks.

The defendant tries to get some comfort out of the fact that some of the orders were marked " protect in full."   But in the first place, this was not true of all, and in the next it meant only that the stock was not to be sold out and that the margin would be kept good until further orders.   The theoretic possibility that under such an order margins might be furnished until the stock had lost all its value and then the worthless certificate turned over, was very far from conclusively establishing an intent to make an actual purchase, contrary to the express testimony of all who acted in the affair.

*Exceptions overruled.*