OSCAR M. CHANDLER, executor, *vs.* FREDERICK H. PRINCE.

Suffolk.    January 15, 1913. — February 27, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Wagering Contracts,* Proof of intent, Damages.    *Evidence,* Presumptions and burden of proof.    *Damages,* In contract.

In an action under R. L. c. 99, § 4, by the executor of the will of a woman, for the value of securities alleged to have been delivered by the plaintiff's testatrix to the defendant as margins on wagering contracts, where it appears that in the transactions in question a certain person acted as the agent of the testatrix in dealing with the defendant, it is error for the presiding judge to instruct the jury that the burden of proof is on the plaintiff to show that both the plaintiff's testatrix and the person who acted as her agent affirmatively intended that there should not be *actual purchases and sales* by the defendant.

In an action under R. L. c. 99, §§ 4, 6, 7, for the value of securities alleged to have been delivered by the plaintiff to the defendant as margins on wagering contracts, if it appears that the securities at the time they are alleged to have been delivered to the defendant had been pledged by the plaintiff to other persons to secure certain loans and that the plaintiff transferred to the defendant only his rights as pledgor, whereupon the defendant paid off the loans and obtained possession of the securities, the liability of the defendant, if it is established, extends only to the value of the securities subject to the pledges from which they were redeemed by him.

CONTRACT, under St. 1890, c. 437, §§ 1, 2, 4, (R. L. c. 99, §§ 4, 6, 7,) by the executor of the will of Mary F. Colburn for the value of certain securities alleged to have been delivered by the plaintiff's testatrix to the defendant as margins on wagering contracts in which the plaintiff's testatrix intended that there should be no actual purchase or sale and the defendant had reasonable cause to believe that such intention existed.    Writ dated May 7, 1900.

At the trial in the Superior Court before *Dubuque,* J., the evidence included an auditor's report and also oral testimony.    It appeared that in the transactions in question one Kimball acted as the agent of the plaintiff's testatrix.    The instruction given by the judge at the request of the defendant in regard to the burden of proof in showing the intention of the plaintiff's testatrix and of Kimball is quoted in the opinion, where also are stated an agreement of the parties and the instruction of the judge as to the

amount which the plaintiff was entitled to recover if he made out his case.  The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*V. J. Loring & W. R. Bigelow*, (*J. P. Sylvia* with them,) for the plaintiff.

*R. G. Dodge*, (*H. S. Davis* with him,) for the defendant.

SHELDON, J.   There might be in any event some difficulty in sustaining the plaintiff's exceptions to the admission of the testimony put in by the defendant to show his payments to the firm of Charles Head and Company and to the Merchants National Bank.   It is not necessary however to consider the point.   It was material to show what these amounts were because the securities for which the plaintiff seeks to recover were not themselves delivered by Mrs. Colburn to the defendant, but came to him partly from the bank and partly from that firm, by each of which some of the securities were held as pledges for amounts due to them respectively;  and the defendant was to pay the amounts due to them and made these payments accordingly.   The amounts so paid by the defendant were agreed upon by the parties later in the trial.   It follows that the plaintiff was not aggrieved by the admission of this testimony.   And at the close of the evidence the parties agreed that "the difference between the market value of the securities deposited by Mrs. Colburn with the plaintiff [meaning of course the defendant] at the date of the demand and the total of the several sums advanced by the defendant to Charles Head and Company and to the Merchants National Bank on the plaintiff's account when taking over the securities (with interest on such total to the date of the demand) was $29,344."  The jury were instructed that this was the amount which the plaintiff was entitled to recover if he made out his case.

The testimony of George was not incompetent when admitted. The whole account between Mrs. Colburn and the defendant was material to show what had been done with reference thereto by the parties, and what money had been paid or received by each of them.   All of these matters might have a bearing upon the issue whether any and which of the purchases and sales made by the defendant for her were actual transactions or were merely wagering contracts within the provisions of R. L. c. 99, § 4, and also upon the issue whether the defendant had reasonable cause to believe

that her intention was what the statute speaks of. Smith's testimony that the defendant was at all times carrying for her the securities shown on her account, that of Smith and Wadden that no orders ever were "bucketed" by the defendant's firm, and that of Wadden that these were all actual transactions, were competent for the like reason. Knowledge of the invariable course of business adopted may qualify a witness to testify that a certain particular thing was or was not done in some particular course of dealings. *Allwright* v. *Skillings,* 188 Mass. 538. There is nothing inconsistent with this in *Anderson* v. *Metropolitan Stock Exchange,* 191 Mass. 117, 122. The latter testimony was not offered upon the issue of Mrs. Colburn's intention.

The judge had the right in the exercise of his discretion to admit the tabulation of the defendant's claims "solely as a chalk or memorandum of what the defendant claimed and not as evidence."

The testimony as to the colloquy between counsel before the auditor was competent to meet the contention, apparently made by the plaintiff in the cross-examination of Smith and by the introduction of the notice to the defendant's attorneys and of the defendant's answers to interrogatories, that the defendant had endeavored to withhold his books from examination.

We do not care to consider in detail the requests for instructions which were refused, or those which were given to the jury, except the rule of damages which was adopted and the instruction given at the request of the defendant that "the burden of proof is on the plaintiff to establish that both Mrs. Colburn and Kimball affirmatively intended that there should not be actual purchases and sales by the defendant." All the other rulings were at least sufficiently favorable to the plaintiff.

If we follow the language of the statute, this last instruction clearly required too much of the plaintiff. Mrs. Colburn could have recovered, and the plaintiff as her representative could recover, if it was proved that she at the time intended that there should be no actual purchases or sales, and that the defendant at the time had reasonable cause to believe that she so intended, unless the defendant had made actual purchases and sales or valid contracts therefor, in accordance with her orders. *Rice* v. *Winslow,* 180 Mass. 500. *Thompson* v. *Brady,* 182 Mass. 321. *Post*

v. *Leland,* 184 Mass. 601. *Wilson* v. *Head,* 184 Mass. 515. *All-wright* v. *Skillings,* 188 Mass. 538. *Fiske* v. *Doucette,* 206 Mass. 275. *Greene* v. *Corey,* 210 Mass. 536. It may be that if she had left to Kimball the whole control of her dealings with the defendant, or if the defendant received no other information from her than what came to him from Kimball, Kimball's intention as communicated to the defendant would be taken to be her intention. *Davy* v. *Bangs,* 174 Mass. 238. *Marks* v. *Metropolitan Stock Exchange,* 181 Mass. 251. *Welch* v. *Corey,* 201 Mass. 165, 170. But on principle we know of no ground for saying that where one engages in wagering contracts of this kind by the employment of a broker, to whom he gives orders through an agent of his own, he must in an action like this prove the affirmative intention both of himself and of his agent that no actual purchases or sales shall be made upon his orders. Perhaps it may become practically necessary for him to do substantially this in order to show that the broker had reasonable cause to believe that this intention of the customer existed. But that was not conclusively shown to be the case here.

The defendant contends however that the ruling given is sustained by the case of *Davy* v. *Bangs,* 174 Mass. 238. The ruling there made was that a plaintiff who had acted in such dealings through an agent could recover if otherwise entitled to do so, upon proof that neither she nor her agent "intended to perform the contracts by the actual receipt and delivery of the securities and commodities and the payment of the price." This ruling was sustained against the defendant's exception. Whether it was sufficiently favorable to the plaintiff and could have been sustained against an exception by him, was not open and could not have been decided in that case. It affords no authority for the ruling here in question. We cannot tell whether the verdict for the defendant was rendered upon the ground that the defendant had made actual purchases and sales upon all the orders of Mrs. Colburn, or upon the ground that the plaintiff had failed to prove the affirmative intention of both Mrs. Colburn and Kimball that there should be no actual purchases or sales, or perhaps upon the ground that the defendant did not have reasonable cause to believe in the existence of such an intention. Accordingly there must be a new trial.

This result makes it necessary to consider what damages are to be recovered if the plaintiff shall prevail. By the terms of the statute the recovery must be for the value of what Mrs. Colburn delivered or caused to be delivered to the defendant. *Davy* v. *Bangs,* 174 Mass. 238. But she did not deliver, she could not have delivered, the securities themselves for which a recovery is now sought. These securities were held upon valid pledges made by herself to secure valid demands against her. It was only the qualified title to the securities, subject to the payment of these demands, that she transferred to the defendant. The defendant had to pay these demands to obtain the securities, and he was authorized by her to do so. There was nothing illegal or in any way wrongful in this, whatever the subsequent dealings between the defendant and her might be. The liability of the defendant, if such a liability afterwards arose, was for the value of what she thus delivered to him, and that was not the securities themselves but the securities subject to the demands for which she had pledged them, and which he paid for her and really at her request. It follows that his liability is for the agreed amount of $29,344, with interest, if he is liable in this action.

*Exceptions sustained.*