MAZIE G. CLEMINSHAW, Plaintiff, v. MICHAEL J. MEEHAN and Others, Copartners Doing Business under the Firm Name of M. J. MEEHAN & Co., Defendants.

Third Department, July 1, 1932.

*Michael D. Nolan,* for the plaintiff.

*Phillips, Mahoney, Leibell & Fielding [ Neile F. Towner* of counsel], for the defendants.

VAN KIRK, P. J.   On October 23, 1929, the plaintiff left a certificate for seventy shares of Western Union Telegraph Company stock with defendants " endorsed in blank by plaintiff, for the purpose of a sale at some future time when directed by her."   At that time she " stated that she desired to place the stock near the market where quick delivery of same could be made."   Defendants, " to insure in their judgment immediate delivery upon the receipt of order to sell," which they expected, " placed " the certificate " in street names " shortly after they received it.   Plaintiff gave no order to sell; on the contrary, she " asked for the return of her stock."   This request was complied with on September 22, 1930, but the same certificate which she delivered to them was not returned.

On the request of the defendants, made March 30, 1930, that plaintiff verify their account with her, plaintiff signed a certificate stating that she was " long " of seventy shares of Western Union. Defendants paid to plaintiff the dividends declared on the seventy shares while the stock was in their hands.   She retained the seventy-share certificate sent to her, but complained that they did not return the same certificate which she had delivered to them.   She now demands judgment for $1,872.50, the difference between the value of the stock as quoted November 8, 1929, when the seventy shares were transferred to other names, and its value September 22, 1930, when a seventy-share certificate for the same stock was delivered to her.

Defendants did not become owners of the indorsed certificate by delivery to them.   It does not directly appear that the certificates into which plaintiff's seventy shares were transferred were pledged or disposed of, nor does it in words appear that those certificates were retained by defendants during the entire period.   It does appear that " at all times   *   *   *   defendants had in their possession or under their control, up to and including the time of the return of said 70 shares, at least 70 shares of the stock of the Western Union Telegraph Company, and were ready, able and willing to deliver 70 shares of stock of the Western Union Telegraph Company to the plaintiff upon demand by plaintiff."

If the defendants always kept in their possession or control the certificates received in exchange for the seventy-share certificate delivered to them, there was no conversion.   If they " pledged or disposed of " the transferred certificates, the defendants were

guilty of a felony. (Penal Law, § 956, subd. 1.) We do not think the stipulated facts justify a finding that defendants were so guilty. It seems evident that, when the stipulation of facts was drawn, the parties did not have this section of the Penal Law in mind. They, or at least the defendants, apparently had in mind the holding that a stock certificate is not property; that a certificate of shares in a corporation represents precisely the same kind and value of property as another certificate for a like number of shares in that corporation. (*Caswell* v. *Putnam*, 120 N. Y. 153, 157; *Richardson* v. *Shaw*, 209 U. S. 365, 378, 379.) A certificate for a number of shares of a corporation less than the whole does not identify the part of the property owned by the shareholder; the whole property of the corporation is owned by all the shareholders in common. Plaintiff now owns the same proportionate interest in the property of the corporation which she had when she delivered the certificate to defendants. If plaintiff expected to recover from the defendants on the ground that they were guilty of a felony by their acts, it should plainly appear in the stipulated facts that defendants had " pledged or disposed of " her certificate. Since she indorsed the certificate in blank she must have realized that it would be valuable in the hands of any party who procured it in good faith and for value, without notice that there was any limitation upon the authority of defendants to transfer it to another. (*McNeil* v. *Tenth National Bank*, 46 N. Y. 325.) But to transfer it to street names, for the purpose of insuring immediate delivery upon receipt of an order from her to sell, is not a pledging or disposing of the certificate within the meaning of section 956 of the Penal Law, nor is it a conversion of her property. It does not appear that the defendants sold any of these shares, or realized any profit from the use of them; nor does it appear that the plaintiff has lost anything by any act of the defendants. She has accepted and retained the returned certificate. Her loss is not due to any wrongful act of the defendants, but solely to the fall in the value of her interest in the corporate property as measured by the quotations for the stock on the exchange. Her property right was at all times represented and measured by a certificate for seventy shares of the stock. " One share of stock is not different in kind or value from every other share of the same issue and company. They are unlike distinct articles of personal property which differ in kind and value, such as a horse, wagon or harness. The stock has no ear-mark which distinguishes one share from another, so as to give it any additional value or importance; like grain of a uniform quality, one bushel is of the same kind and value as another. This doctrine appears to be well sustained by authority." (*Caswell* v. *Putnam, supra*.)

" It is a misconception of the nature of the certificate to say that a return of a different certificate or the right to substitute one certificate for another is a material change in the property right held by the broker for the customer." (*Richardson* v. *Shaw, supra,* 379.) That was a case where the customer was purchasing on margin, but under the facts stipulated here it is a correct statement of plaintiff's property rights. If one man delivers a thousand dollars in currency for safekeeping to another, which money the latter deposits in his own name in a bank, he is not guilty of conversion, and if on demand he gives a check on the bank which is honored and paid to the former, the obligation of the latter is fully discharged. Under the authorities there can be a conversion of a certificate of stock, but " to authorize the action of trover, two things are necessary: 1. Property in the plaintiff with a right of possession; and 2. A conversion by the defendant of the thing to his own use." (*Salt Springs National Bank* v. *Wheeler,* 48 N. Y. 492, 495.) We find no stipulated facts showing that defendants converted the certificate to their own use, or that they did any act with a wrongful intent. (26 R. C. L. p. 1111, § 21; *Rogers* v. *Huie,* 56 Am. Dec. 363.) The broker is bound to obey his client's instructions and is responsible for any loss resulting from a breach of duty. In 9 Corpus Juris, page 528, section 29, are cited *Picard* v. *Beers* (195 Mass. 419); *Day* v. *Holmes* (103 id. 306); *Parsons* v. *Martin* (11 Gray, 111) as " holding that a broker to whom a certificate of shares has been intrusted by the owner with written directions to sell under specified circumstances has no right to transfer the shares for any other purpose to the name of another person or to his own name." We do not think those authorities apply to the instant case. Here the transfers were made by the brokers to facilitate as they understood the direction of the client. In *Matter of Mills* (125 App. Div. 730) certain certificates of stock had been deposited with brokers solely for safekeeping, which the brokers used as security for their own obligations, and it was held that the brokers were guilty of larceny. In the instant case it does not appear that the defendants so used the certificate deposited with them.

The defendants are entitled to judgment dismissing the claim, with costs.

All concur; McNAMEE, J., not voting.

Judgment rendered for the defendants dismissing the claim of the plaintiff, with costs.