PATRICK J. WELCH *vs.* HAROLD D. COREY & others.

Essex.    November 6, 1908. — February 26, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Agency,* Existence of relation.  *Wagering Contracts.  Pleading, Civil,* Declaration, Variance.  *Evidence,* Relevancy and materiality.  *Release.  Words,* "Payment."

At the trial of an action under R. L. c. 99, § 4, for the recovery of money alleged to have been paid by the plaintiff to the defendant, a stockbroker, upon wagering contracts, it appeared that the payments were made to one G., who the plaintiff contended was an agent of the defendant.  There was evidence tending to show that G. maintained a stockbroker's office in Salem, where the plaintiff lived, and a private wire to the defendant's office, which was in Boston, that G. had signs upon his place of business and an advertisement in a Salem newspaper which declared him to be " correspondent of " the defendant, that a market letter, of which the plaintiff received a copy each week, was " put out " by the defendant, and had on it " G., correspondent of " the defendant, as did also a memorandum book given to the plaintiff by G., and that G. " had authority to use " both " as correspondent."  The same words appeared upon the bought and sold orders given by the plaintiff to G. and upon all the stationery which G. used.  What meaning attached to the word " correspondent " as thus used did not appear, but there was evidence that it had no special meaning in the stock brokerage business.  It also appeared that for some reason the defendant did not carry out one order given to G. by the plaintiff, that the defendant received all the profits from the transactions with the plaintiff, G. receiving only a commission, that on one occasion in the course of the transactions between them G. gave the plaintiff a check signed by himself as " attorney," that in deposit slips given to the plaintiff by G. and signed by him personally G. used the word " we," not referring in any way to the plaintiff.  *Held,* that there was evidence tending to show that G. acted as an agent for the defendant in his transactions with the plaintiff.

In an action under R. L. c. 99, § 4, for money paid on wagering contracts, evidence tending to show that the plaintiff paid the money to one who acted as an agent of the defendant in the transactions, that the plaintiff intended that no actual purchase or sale of stocks should be made and that the agent had reasonable cause to believe that such intention existed, will warrant a finding for the plaintiff.

In an action for money had and received, with an account annexed stating merely amounts alleged to have been so paid and received, with dates, the plaintiff offered evidence tending to show that, preceding each date in the account an-

nexed, the plaintiff, intending not to make any purchase or sale of things of the kind specified in R. L. c. 99, § 4, made a deposit of money with an agent of the defendant who knew or had reasonable cause to know of his intention, and who gave him a receipt stating that the payment so made was to be held as security for or applied in part payment of all transactions between the parties, that it orally was agreed between the plaintiff and the agent that such money was to be held by the defendant until there was a loss on the transaction, when payment was to be made of the loss from the amount deposited, that losses occurred on the dates and in the amounts stated in the account annexed, and that the funds previously deposited by the plaintiff with the agent were applied to make them good. *Held*, that upon such application by the defendant of the funds previously deposited with the agent by the plaintiff, a "payment" was made by the plaintiff within the terms of R. L. c. 99, § 4, and that therefore there was no variance between the declaration and the proof.

In an action under R. L. c. 99, § 4, to recover money paid on wagering contracts, evidence as to where the plaintiff procured the money which he used in the transactions is immaterial.

One who has paid money to an agent of a stockbroker under circumstances sufficient, under R. L. c. 99, § 4, to make the stockbroker liable for the amounts so paid, does.not release the stockbroker by releasing the agent personally.

CONTRACT for money had and received, with an account annexed stating merely dates . and amounts of money. Writ in the Superior Court for the county of Essex dated August 16, 1905.

The case was tried before *Sanderson,* J. The facts are stated in the opinion. The jury found for the plaintiff ; and the defendants alleged exceptions.

*H. W. Ogden, (H. Palmer* with him,) for the defendants.

*G. C. Richards,* for the plaintiff.

MORTON, J. This is an action of contract brought by the plaintiff to recover from the defendants certain sums of money alleged to have been lost in wagering contracts respecting the sale and purchase of stocks made by the plaintiff with the defendants. There was a verdict for the plaintiff and the case is here on exceptions by the defendants to the admission of evidence, to the refusal of the presiding judge to give certain rulings which were requested, and to certain portions of the charge.

The transactions are alleged to have been entered into through one Gross, who did business in Salem, where the plaintiff lived, and the principal question is whether there was any evidence warranting a finding that Gross was the agent of the defendants, or whether his relation to them was simply that of a customer who

placed with them orders which he had received from his customers and for which the defendants paid or allowed him certain stipulated commissions.

It was not disputed that there was something more than a merely casual relation between Gross and the defendants. To show that the relation was not that of principal and agent, the defendants relied amongst other things on a written contract bearing date November 10, 1904, entered into between them and Gross by which, amongst other things, Gross agreed that he would not act as agent for his customers in sending orders to the defendants and would not state orally or in writing to any person that he was such agent and that all orders sent should be his orders and not the orders of his or the defendants' customers. This agreement was to run for three months. It had expired before the transactions in question took place * and there was nothing to show that it had been renewed or extended. The defendants asked the presiding judge to instruct the jury that the relation between Gross and the defendants established by this agreement " was not an agency to make contractual relations between the defendants and the customers of Gross under the provisions of chapter 99 of the Revised Laws," and the judge so instructed the jury. There was other evidence, however, besides this written agreement, bearing upon the relations between Gross and the defendants, and the question was whether upon the whole evidence including the written agreement he was or was not acting for the defendants with their knowledge and express or implied consent in his dealings with the plaintiff.

There was evidence tending to show that the sign at the entrance of the building where Gross had his office bore the words " B. O. Gross, Banker & Broker. Correspondent of Corey & Milliken " ; that the same words were on his office door; and that the plaintiff received each week through the mail a market letter, so called, put out by the defendants which had upon it the words " B. O. Gross, Banker & Broker, 60 Washington St., Salem, Mass." and underneath these the words " Correspondent of Corey, Milliken & Co., Established 1890

---

* The earliest item in the account annexed to the declaration was dated March 20, 1905.

15 State St., Boston, Mass." It did not clearly appear whether this was mailed by the defendants, or by Gross, but there was testimony warranting a finding that if it was mailed by Gross the act was an act authorized by the defendants.* The same words " Correspondent of Corey, Milliken & Co." also appeared upon a memorandum book given by Gross to the plaintiff, and put out by him with the authority of the defendants. And the defendants' manager testified amongst other things that if Gross wired orders to the defendants it would be proper to stamp the orders " Bought through Corey, Milliken & Co." There was testimony tending to show that the bought and sold orders given by the plaintiff to Gross in regard to the various stocks to which the transactions in suit related were all so stamped, or that if any were not so stamped the omission was inadvertent. The letter paper used by Gross also had these words upon it, and there was testimony tending to show that no letter paper was used by Gross during the time covered by the transactions in question and during his connection with the defendants that did not have Corey, Milliken and Company's name upon it. It did not appear what was the meaning attached to the word " correspondent " as thus used. The defendants' manager testified that the word had no special meaning in the stock business. And the jury may well have been of opinion that it indicated and would generally be regarded by parties dealing with Gross as indicating that some sort of agential relation existed between him and the defendants. There was also evidence tending to show that there was a private wire from Gross's office to that of the defendants ; that, on one occasion when the plaintiff gave Gross an order to sell certain shares which Gross sent to the defendants, they did not sell according to the order, either through inadvertence, or, as might have been found, because in the exercise by them as principals of a supervision over the business sent to them by Gross, they chose not to; that the deposits made by the plaintiff with Gross on account of margins were immediately sent by him to the defendants,

---

* The defendants' manager testified " that the market letter . . . in evidence was the defendants', and put out by them, and Mr. Gross might use it as correspondent, as it was labelled ; that he had authority to put out the memorandum book that was put out to anybody."

and all the profits of the business were taken by the defendants, Gross receiving only his commissions; that on one occasion in connection with one of the transactions Gross gave the plaintiff a check signed by himself as attorney; and that in the deposit receipts given by Gross to the plaintiff for the amounts paid by the plaintiff to him on account of margins, it was provided amongst other things that "we may hold the same as security," etc., and "we reserve the right as your agents with power irrevocable," etc., one explanation of which could be found to have been that they were given in that form because the defendants were behind Gross and because it was they who were meant by or included in the word "we." This view derives some support from the fact that all of the deposits were sent to the defendants and all of the stocks were bought and sold through them. If Gross was the agent of the defendants, the manner in which he kept his accounts with the defendants could be found to be consistent, to say the least, with that relation.

There was much testimony, oral and documentary, tending to show that the relation between Gross and the defendants was not that of principal and agent, but that of seller or buyer and customer; that the money deposited by Gross with them was deposited as his money to secure them in regard to transactions entered into between him and them; that the only party that they knew or dealt with was Gross; that they exercised no control or supervision over him or his business or his books; and that the plaintiff must have known and understood and did know and understand that he was dealing with Gross and no one else. But it was for the jury to say, we think, upon all the evidence what the real relations between Gross and the defendants were. They may have thought, and if they did we cannot say that they were wrong, that there had been an unsuccessful attempt on the part of the defendants to enter into relations with Gross which would give them all the benefits which would result from his acting as their agent without subjecting them to any of the liabilities.

There was abundant evidence to warrant a finding that, at the times when the transactions relied upon were entered into, the plaintiff intended that there should be no actual purchase or

sale of the stocks to which the transactions related. And, if Gross was to be regarded as the agent of the defendants in relation thereto, there was also abundant evidence that the defendants had reasonable cause to believe that such intention existed. In other words, if Gross be regarded as the agent of the defendants, there was evidence warranting a finding that the plaintiff had, in those particulars, made out a case within the statute. R. L. c. 99, § 4.

The plaintiff's declaration was for money had and received, and it is well settled that such an action will lie to recover, under the statute, money alleged to have been lost in wagering contracts. *Crandell* v. *White*, 164 Mass. 54. The defendant contended and asked the presiding judge to rule that there was a variance in regard to the items between the proof and the declaration, and also excepted to the instructions relating thereto. The contention was, in substance, that the payments were not made when and as alleged. There was evidence tending to show that, as transactions were entered into, deposits were made by the plaintiff with Gross who, as the jury must have found, acted as agent for the defendants, which, according to the terms of the receipts given for them by Gross, were to be held as security for or applied in part payment of any and all transactions between the parties. The presiding judge instructed the jury, amongst other things, that in order to recover the plaintiff had got to show that the items in the declaration were for payments that he had made; that he could not recover for losses as such; that the receipts were for different sums and at different times from the items in the declaration; that the plaintiff contended that the defendants were to hold the money that was paid on the receipts until there was a loss, when payment was to be made of the loss from the money, and that, if the jury found that payments were made in that way, if the defendants or their agent held the money to be applied as a payment equal to the amount of the loss and it was so applied, then it was a payment to that amount and the plaintiff could recover if they found for him on the other branches of the case. But if payment was made and accepted by the plaintiff and defendants according to the receipts then made and accepted by the plaintiff and defendants on account of contracts to buy stock which there was no

intention to buy, then the payments would not be the payments declared on and the plaintiff could not recover. The instructions thus given were addressed, as the exceptions taken by the defendants to the charge were, to the single point of payment and we think that they were correct. If the money was received by the defendants or by Gross as their agent as contended by the plaintiff, then until it was applied in the manner agreed upon it was a deposit and not a payment, and when so applied it became a payment and not until then. There was evidence as to ten of the items contained in the declaration that payments corresponding in dates and amounts to those items were thus made, and, while the evidence was not so satisfactory as to the other items in the declaration, we cannot say that there was no evidence warranting a finding in the plaintiff's favor in regard to them.

The plaintiff was asked whether he ever told Gross where he got the money and he answered " Yes." He was then asked what he told him. The defendants objected and excepted to this question. The witness was permitted to answer and replied, " After I took my loss I told him that I borrowed the money from my boy and my wife and lost it all." He was then asked where he did get the money, and this also was objected to and admitted subject to the defendants' exceptions. The witness answered that he borrowed it from his boy. He was further permitted to testify subject to the defendants' objection and exception that he borrowed $600 altogether from his son and $400 from his wife; that to get money on the People's Gas he gave a mortgage on his house and told Gross about it; that at the time he started on the margin transactions he had no other property than the house, which he later mortgaged, the $40 dollars and the stock which he bought. We think that this testimony was inadmissible, and we cannot say that it may not have operated to the prejudice of the defendants. It was immaterial where the plaintiff got the money from for the margin transactions or whether he told Gross or not. It is further to be noted that part of the conversation with Gross that was admitted took place after the transactions had been closed.

The instruction which was requested by the defendants to the

effect that the defendants would be released if the plaintiff had released Gross was rightly refused.

Because of the error in the admission of the testimony of the plaintiff as to where he got the money which he used, the entry must be

*Exceptions sustained.*