GEORGE H. CAULFIELD & another *vs.* MOTOR SPECIALTIES COMPANY.

Middlesex.   April 11, 1923. — May 25, 1923.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Evidence*, Extrinsic affecting writing.   *Contract*, What constitutes.   *Practice, Civil*, Variance.

At the trial of an action for breach of an oral agreement by the defendant to give to the plaintiff sufficient orders for the manufacture of bullet slugs at a certain rate to enable the plaintiff from the profits to reimburse himself for the cost of certain machinery and to give him in addition a fair profit upon such orders, it appeared that the defendant gave the plaintiff an order in writing for one million slugs, which later was cancelled, and that a second order for two million slugs was given in its place; and there was evidence tending to show that, previous to the first order, the plaintiff had had several conversations with the defendant in which the terms of the contract were agreed upon, including a reference to orders for five million slugs and a provision that the defendant should furnish the steel for the slugs without cost to the plaintiff.   The orders in writing included a speci-

fication, "Material to be furnished by us and billed at cost price and deducted from payments due for accepted cores." There was a verdict for the plaintiff. On exceptions by the defendant, it was *held*, that

(1) The evidence relating to the conversations previous to the order in writing properly was admitted, because the order in writing was not intended as the basis of a contract but only as an incident in the performance of the contract;

(2) The written specifications in the order requiring payment by the · plaintiff for material in the circumstances were not as a matter of law sufficiently explicit to override and overcome the oral agreement of the defendant to furnish the steel for the slugs, the question of payment for material being an issue of fact to be determined by the jury;

(3) The reference to five million slugs in the conversations creating the contract was consistent with a contract to give orders for that amount and as many more as the plaintiff could make, and did not constitute a variance between the contract set out in the declaration and that proved at the trial.

CONTRACT for damages alleged to have resulted from failure of the defendant to perform an oral agreement to give to the plaintiffs sufficient orders for bullet slugs so that their proceeds would pay for certain machinery installed by the plaintiffs at the request of the defendant and also a fair profit upon such orders. Writ dated December 12, 1918.

The action was tried in the Superior Court before *Fox*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. The defendant also asked for the following rulings:

" 1. On all the evidence the plaintiff cannot recover."

" 3. On all the evidence the plaintiff can recover no more than nominal damages."

" 5. If the jury find that no profit would have resulted if the plaintiffs were permitted to complete the contract only nominal damages can be recovered."

" 13. The plaintiffs can recover nothing for prospective profits."

" 24. The contract as alleged in the declaration is too vague and indefinite, as to the amount of slugs required by the contract to be ordered by the defendant from the plaintiff, to permit a recovery of more than nominal damages.

" 25. The plaintiffs cannot recover on the evidence under the allegations in this declaration because of the variance

between the allegations and the proof, viz., in that the declaration alleges that the defendant ' would give to the plaintiffs sufficient orders for the manufacture of slugs or bullets at $6 per thousand bullets and furnish at its cost the material for making the same to enable the plaintiffs from the profits to reimburse themselves for the cost of said machinery or for any loss which they might suffer in consequence of purchasing and installing the same and give to the plaintiffs in addition a fair profit upon such orders;' whereas the evidence of the plaintiff was to the effect that such contract further included a provision in substance that the total amount of orders for slugs or bullets which the defendant was obligated to give the plaintiffs did not exceed or was limited to five million slugs."

The rulings were refused. The jury found for the plaintiffs in the sum of $4,992.34; and the defendant alleged exceptions.

The case was submitted on briefs.

*C. H. Donahue,* for the defendant.

*W. B. Grant & H. E. Whittemore,* for the plaintiffs.

PIERCE, J.  This is an action of contract on an alleged oral agreement of the defendant to give to the plaintiffs sufficient orders for the manufacture of slugs or bullets at $6 per thousand bullets, and to furnish at its cost the material for the making of the same, to enable the plaintiffs from the profits to reimburse themselves for the cost of certain machinery, or for any loss which they might suffer in consequence of purchasing and installing the same, and give to them in addition a fair profit upon such orders, if the plaintiffs would purchase and install in their factory at Keene, New Hampshire, the necessary automatic and other machines for the manufacture of slugs, or armor piercing bullets, for the defendant for the use by it in making ammunition.  The declaration alleged that the plaintiffs thereupon entered into the performance of such contract and purchased and installed such necessary automatic and other machinery, and were prepared and in condition to manufacture for the defendant all such orders contemplated by the said contract; that the defendant thereupon gave to the plaintiffs an order

to manufacture one million armor piercing bullets under said contract; that the plaintiffs proceeded thereunder and submitted sample slugs to the defendant; that the defendant instructed the plaintiffs to stop work until changes were made in the design of the bullet; that upon such changes being made, the defendant ordered the plaintiffs to proceed with the manufacture of two million bullets under said agreement; that the plaintiffs then proceeded with the execution of said contract and had manufactured a large quantity of said bullets and were fully equipped to perform the entire contract, when the defendant ordered and directed the plaintiffs to cease the manufacture thereof and terminated the contract. The answer was a general denial. There was a verdict for the plaintiffs for the sum of $4,992.34. The case comes before this court on exceptions by the defendant to the admission of evidence, to the refusal of the trial judge to take the case from the jury and to give instructions asked for by the defendant.

At the trial, subject to the exception of the defendant to all evidence of conversations with the defendant's general manager (one Hersee) prior to the date of the written order (hereinafter referred to) for one million bullets, the plaintiff Caulfield testified that he went to the defendant's plant in Waltham with one Diefendorf, and one Sabin, an agent for the Cleveland Automatic Machine Company, and there saw Hersee, who had previously stated to Diefendorf, that if he (Diefendorf) could get some one to make bullets for him for the government he would furnish the work. At this meeting, the plaintiff testified, he was introduced to Hersee by Sabin as " the man from Keene who would consider making bullets; " that he asked what the work was and Hersee said it would require automatic screw machines; that he asked Hersee about the pay and Hersee said $5 per thousand bullets; that there was a lot of money in it at $5 per thousand; that he told Hersee that he could not buy the machines unless he could see a profit, as he had no other use for the machines and would have to borrow money with which to buy them; that he would buy them if Hersee would assure him of a contract which would give money enough

to pay for the machines, and Hersee assured him that there would be money enough for everybody; that he then learned from Sabin in Hersee's presence that the machines would cost $8,000 or $9,000; that he then asked Hersee what the chances were of the contract being cancelled and the machines left on his hands, and Hersee replied there was plenty of business, that the government had adopted the bullet, and even if the armistice was signed there would be plenty of work as he had the inside track; that the government had advanced him $60,000 before he started manufacturing; that he told Hersee " that if the latter would absolutely guarantee business enough so he could pay for the machines and make a profit he would take up the matter of raising the money; " that he asked Hersee how large an order would be given him and Hersee said five million of which one million would be given at that time.   On cross-examination Caulfield testified that Hersee told him, that if he (the plaintiff) would buy the machines he would give orders enough to pay for the machines and a handsome profit, and that he would keep on making bullets long after the war was over because the government had adopted that kind of bullet for small arms.   He further testified that the matter of type of machines was talked over with Sabin at that time who advised the large type of machines; that Hersee said he thought the large machines did better work; that he (Hersee) would pay $6 per thousand for the labor and would furnish the material, that all the plaintiffs had to do was to manufacture, that the plaintiffs must keep strict account of butt ends and small waste as the defendant had to keep an account of the steel with the government, and that he would assist in getting the machines by helping to get a priority order from the government; that shortly after the interview above described, the plaintiff, Caulfield, and one Edgar N. Hunt, father of Caulfield's partner, saw Hersee in Waltham, where Hunt told Hersee that unless the latter could assure him that the plaintiffs could make some money he did not care to go to the expense and trouble to buy new machines; that Hersee stated that he could guarantee enough orders to pay for the machines and pay the plaintiffs

a profit — the material to be furnished by the defendant — that he would give a contract for five million bullets and all the plaintiffs could make, he wanted to see if they could make them perfectly and would give an order for one million bullets at that time.

In regard to the conversation as to the size of the order and to the material, Diefendorf testified: " Hersee said that he would give Caulfield an order large enough to pay for the machines, and would pay him over that; the amount of the order would depend upon the number of machines bought. The material was to be furnished by the defendant." In cross-examination he testified that " he understood from the conversation that the more machines Caulfield bought the larger would be the order for the bullets and that the decision as to the type of machines to be bought was left to Caulfield, that . . . nothing was said as to who was to pay for . . . [the material]." Charles N. Sabin testified that Hersee said he would give Caulfield " an order for a million bullets and would follow that by other orders to the extent of five or six million; Hersee was to furnish the material." Edgar N. Hunt testified that Hersee said he could guarantee enough orders to pay for the machines and pay the plaintiffs a profit; that the material was to be furnished by the defendant.

In July, 1918, Caulfield saw Hersee and told him they had arranged for the money to buy the machines; and asked him to get a priority order for their manufacture or release by the Cleveland Automatic Machine Company of the machines. The defendant delivered to the plaintiffs a written and signed order dated July 25, 1918, for " 1,000,000 bullet cores as per attached specifications, price to be $6.00 per thousand." The attached specifications set forth full provisions as to the time and rate of delivery, method of packing, the diameter and length of the cores to a thousandth of an inch, the terms of payment and data fully covering the manufacture, shipping and delivery of the cores. Paragraph 4 provided: " Material to be furnished by us and billed at cost price and deducted from payments due for accepted cores." Caulfield testified that he did not read particularly the provision that the plaintiffs were to bill the materials

at cost price, and his attention was first brought to the paragraph in the spring of 1921 in his attorney's office. He also testified that the plaintiffs were not to pay for material; that it was not the intention to do that; that he did not go ahead under any such agreement; that they carried out the agreement that the defendant was to charge the material to the plaintiffs and the plaintiffs were to charge it back; that if the plaintiffs had to pay for the material there would not have been enough in the contract to have paid for the labor; that he was to keep track of the waste steel and Hersee told him to do so.

It is not in dispute that the first order for one million bullets was cancelled; nor is it in dispute that a second order for two million steel slugs was given by Hersee to the plaintiffs, that the plaintiffs made a part of the order which met the requirements of the specifications, and that the defendant then ordered the plaintiffs to " suspend work bullet cores government cancellation seems certain." In December, 1918, the plaintiffs wrote the defendant as to what they should do with the finished bullets and the defendant replied that it desired the plaintiffs to hold them in abeyance. The defendant in this letter suggested that the plaintiffs " submit a memo of costs you have incurred in carrying the slug job up to the time of our notice as it is our intention to settle with you on the same basis as we settle with the Government."

Upon the testimony of Caulfield and the plaintiffs' witnesses we think the terms of the contract were to be ascertained and determined from a consideration of the conversations of Caulfield, Hunt and Hersee in connection with the orders and specifications, delivered to the plaintiffs by the defendant. The evidence admitted against the exceptions of the defendant was not obnoxious to the rule that parol evidence is not admissible to vary the terms of a written instrument, because that instrument, the order, was not intended as the basis of a contract but was one of several orders, which the defendant was required to give the plaintiffs in performance of its contract to give orders for bullets, which in the aggregate should be large enough in profits to

the plaintiffs to pay for the machines which the plaintiffs should purchase and in addition give the plaintiffs a profit. It is plain the evidence was received rightly.

The defendant next contends that if the terms of the contract are to be ascertained upon consideration of all the evidence, it thereby appears, as matter of law, that the plaintiffs were required to pay for the material and that the damages are the highest nominal. The plaintiffs conceded at the trial and the presiding judge charged the jury in substance that there would not be in the contract any profit and there would not be enough in the contract to pay for the labor, if the material was not furnished to the plaintiffs without costs. Upon consideration of all the evidence we think the provisions of paragraph 4 of the specifications are not sufficiently explicit, as matter of law, to override and overcome the oral agreement of the defendant to furnish the material from which the bullets were to be made. Nor do we think as contended by the defendant that it can be ruled as matter of law that the plaintiffs accepted the proposal of the defendant after the giving of the first order for the bullets, and that therefore the provision of the specifications as to the payment of the materials settles that element of the contract. Whether the plaintiffs or defendant upon the contract as found by the jury should pay for the material was clearly an issue of fact to be determined by the jury upon contradictory evidence. This issue was submitted to the jury with full instructions, to which no exception was taken.

The defendant further contends that its request for an instruction that the plaintiff cannot recover because of the variance between the allegations and proof, viz. " that the declaration alleges that the defendant: —
'would give to the plaintiffs sufficient orders for the manufacture of slugs or bullets at $6 per thousand bullets and furnish at its cost the material for making the same to enable the plaintiffs from the profits to reimburse themselves for the cost of said machinery or for any loss which they might suffer in consequence of purchasing and installing the same and give to the plaintiffs in addition a fair profit upon

such orders' whereas the evidence of the plaintiff was to the effect that such contract further included a provision in substance that the total amount of orders for slugs or bullets which the defendant was obligated to give the plaintiffs did not exceed or was limited to five million slugs." We do not think the jury were required by the evidence to find such a variance. There was evidence, if believed, that the defendant's agent agreed to give an order for five million bullets and all the plaintiffs could make. Moreover, the judge charged the jury " if the defendant agreed to give them orders for from one to five million then the plaintiff must fail because in law an order for from one to five million can be only an order for one million, and that is not the contract which is set out and which is claimed." No exception was taken and no argument is made as to the amount of the verdict.

What has been said covers the several contentions of the defendant as argued. It results that the exceptions must be overruled.

*So ordered.*