KESSLEN SHOE COMPANY, INC. *vs.* PHILADELPHIA FIRE AND MARINE INSURANCE COMPANY.

Suffolk.    May 14, 1936. — July 2, 1936.

Present: CROSBY, PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Evidence,* Extrinsic affecting writing.    *Insurance,* Theft.

At the trial of an action by a corporation upon a policy of insurance against theft of goods in transportation with a warranty by the assured that the insurance should not enure directly or indirectly to the benefit of a carrier and conditioned to become void upon breach of such warranty or if the assured did any act impairing his right of recovery against a carrier, the evidence warranted findings that the

plaintiff's president in its behalf made an oral agreement with a carrier that the carrier should pay the premium on the policy and should have the benefit of the insurance; and that by reason of that agreement the policy was rendered void.

In an action by a corporation in which the defence was based on an alleged oral agreement between the plaintiff and a third person, it was proper to give effect to evidence of such an agreement notwithstanding a written contract ostensibly made by the plaintiff's president with the third person, either on the ground that the oral agreement was a separate contract independent of the written contract, whether the written contract was the personal contract of the plaintiff's president or was made in its behalf, or on the ground that, if the written contract was a contract of the plaintiff, it contained part only of an entire contract of which the oral agreement was the remainder.

CONTRACT. Writ in the Superior Court dated April 21, 1933.

The action was heard without a jury by *Walsh*, J., who found for the defendant and reported the action to this court for determination.

*F. T. Leahy*, for the plaintiff.

*M. Wambaugh*, for the defendant.

PIERCE, J. This is an action of contract by the insured, Kesslen Shoe Company, Inc., upon an insurance policy covering theft of entire shipping packages, to recover the value of certain leather lost in the course of transportation by Wing's Motor Transportation, owned by one Leonard H. Wing. This action was tried in the Superior Court without a jury, in conjunction with a suit in equity brought by Dietz Kid Inc., the seller of the leather, against the Kesslen Shoe Company, Inc., the buyer, and an action at law by Dietz Kid Inc. against Leonard H. Wing, the carrier. In the equity suit the seller of the leather sought to recover the purchase price from the buyer, and to reach and apply the claim of the latter against the carrier for the loss of the goods.

In the equity suit the trial judge found for Dietz Kid Inc., but found that there was no obligation on the part of the carrier which could be reached by the plaintiff in that action. In the law action against the carrier, he found for the defendant. In the case at bar he found for the defendant insurance company.

In this action the defendant resists payment on the ground that the plaintiff, in violation of the terms of the policy, entered into an agreement with the carrier to give the latter benefit of insurance, or otherwise impaired the liability of the carrier to the plaintiff, and also on the ground that a proper detailed proof of loss in compliance with the policy was not filed by the plaintiff.

By stipulation of the parties the following facts were agreed on: "(1) That Dietz Kid Inc. and the Kesslen Shoe Company on or about November 26, 1932, entered into an agreement, an oral agreement, for the purchase and sale of certain leather. (2) That the Dietz company shipped this leather by Wing's express from Boston, Massachusetts, to Kennebunk, Maine, a shipment of the leather having first been made by Hapgood's Express from Lynn to Boston; that on December 1, 1932, Hapgood delivered the leather to Wing at Boston and collected $6 for his freight charges from Lynn to Boston; that the leather at that time placed upon Wing's express truck was contained in six packing cases and two wrapt bundles. It consisted of the following: . . . [named items] Total invoice price $4,007.88. (3) While Wing's truck on which this leather was loaded was in Plaistow, New Hampshire, certain of this leather, namely, three of the packing cases and the two wrapt bundles, and some of the leather out of a fourth packing case, was stolen from the truck; the leather was then in transit from Boston to Kennebunk, Maine. (4) Two whole packing cases and a part of a third case were delivered to the Kesslen company and a receipt was signed by an employee of the Kesslen company, it being agreed that this receipt may be introduced in evidence as Exhibit 1, and that this was paid for. (5) Two memoranda of agreement dated August 18, 1932, between Wing and Saxe will be admitted in evidence as Exhibit 2. It is agreed on that date Saxe was president of the Kesslen Shoe Company. (6) It is agreed by the insurance company . . . that the insurance policy . . . was in force at the time of the loss, unless the policy had been voided by acts of the insured in breach of warranties and conditions as set forth in the insurance company's answer. It is further agreed

that the loss was duly reported to the insurance company within the terms of the seventh article of the policy, and that a proof of loss which the insurance company claims was inadequate was filed within the four months. (7) It is agreed in the case brought by Dietz against Kesslen Shoe that if Dietz is entitled to recover, he shall recover the amount of $2,396.78, with interest from January 10, 1933."

In addition, there was evidence from which the following facts could be found: The plaintiff is a corporation engaged in the business of making women's shoes, with a factory at Kennebunk, Maine. Samuel D. Saxe was president and active manager of the corporation, and had entire charge of the trucking department. Wing, the carrier, had been doing the trucking for the plaintiff for about four years prior to the loss. Beginning July 1, 1932, he did the plaintiff's trucking under an oral agreement with the plaintiff, made by Saxe, whereby the carrier was to receive a flat sum of $200 per week for his work. In June of 1932, Wing had agreed to pay premiums on a policy of insurance to be issued June 30, 1932, which could be identified as the policy in suit.

On or about August 18, 1932, Wing and Saxe executed the following agreement to go into effect September 1, 1932: "The Wings Motor Transportation will do all the trucking for the Kesslen Shoe Co. under the following terms: . . . [schedule of prices] It is further agreed that the premium for policy covering loss of any merchandise shall be paid by The Wings Motor Transportation. This agreement can be terminated by either party Thirty days after presentation of written notice."

Saxe testified that the "memorandum" or written agreement dated August 18, 1932, contained the entire agreement; that the agreement was with himself personally; that his "associates" in the plaintiff corporation had authorized him to contract on his own responsibility for all the trucking to be done for the plaintiff, and had agreed that he individually should receive from the plaintiff the amount, if any, by which the amount of $800 per month theretofore paid in July and August, 1932, to Wing, under the contract of July 1, 1932, should exceed the expense for trucking

under his personal contract; that the agreement that Wing should pay a premium on a policy of insurance did not refer to any particular policy, but that the policy now in suit was the only policy covering goods carried for the plaintiff; and that in the first instance the premium of $250 on the policy was paid by the plaintiff under date of July 7, 1932, and the plaintiff charged the amount of the premium against its account with Wing. Wing testified, in substance, that he did not observe when he signed the contract that it was made with Saxe, and there was no evidence that prior to the loss the defendant had knowledge of the terms of any agreement between Wing and Saxe or between Wing and the plaintiff, or knowledge of conditions under which the premium was to be paid by Wing.

There was evidence admitted without objection to the effect that the writing did not represent the whole agreement of carriage, and that Saxe, prior to the drawing up of the writing, said to Wing with reference to the payment of the premium by the latter, "In paying the premium that protects you and it protects me." "You have nothing to worry about and I have nothing to worry about, and if we have a loss, you report it to me and I will report it to the insurance company." There was further evidence from which it could be found that the premium paid by the carrier was upon the policy of insurance upon which the plaintiff sues in this action, that said policy was the one contemplated by the parties to the writing, and that it went into effect on June 30, 1932, which was prior to the date of the writing. There was evidence that all bills rendered by Wing, either before or after the writing, were credited to Wing's running account with the plaintiff corporation, or were paid, if paid at all, by checks upon the plaintiff's account. After the loss, Saxe asked Wing to sign a memorandum, drafted at the plaintiff's request by attorneys for the defendant, to the effect that payment by Wing of the premium upon the policy now in suit should not operate to release Wing from any liability. Wing refused to sign the memorandum. The plaintiff made no claim against Wing on account of the loss.

The pertinent provisions of the policy on this point are as follows: "Benefit of Insurance. (6) Warranted by the Assured that this insurance shall not enure directly or indirectly to the benefit of any carrier, bailee, or other party, by stipulation in bill of lading or otherwise, and any breach of this warranty shall render this policy of insurance null and void. . . . Impairment of Carriers' Liability. (10) Any act or agreement by the Assured, prior or subsequent hereto, whereby any right of the Assured to recover the full value of, or amount of damage to, any property lost or injured and insured hereunder, against any carrier, bailee or other party liable therefor, is released, impaired or lost, shall render this policy null and void, but the Insurer's right to retain or recover the premium shall not be affected. This Company is not liable for any loss or damage which, without its consent, has been settled or compromised by the Assured."

The trial judge found that no proper proof of loss was furnished to the defendant, and, further, that the agreement between Saxe and Wing was signed with the intention that it should indirectly inure to the benefit of Wing, and was a violation of conditions 6 and 10 of the policy. He gave certain requests for rulings asked by the parties, and denied others. To the action of the trial judge on the plaintiff's requests for rulings the plaintiff duly excepted. The case was reported to this court upon the questions of law raised by the plaintiff's exceptions.

On the issue as to whether an agreement in violation of the policy was entered into between the plaintiff and the carrier, the plaintiff contends that to allow the defendant to show conversations between Saxe and Wing prior to the writing of August 18, 1932, is to violate the parol evidence rule, since that writing constituted the entire agreement with the carrier; and, further, that any agreements made with Wing were made by Saxe in his individual capacity, and hence could not violate any obligations of the plaintiff corporation under the policy.

The fundamental question, therefore, is whether the plaintiff and Wing entered into a legally binding agreement

whereby Wing was to receive the benefit of the plaintiff's insurance, or whereby the plaintiff released, impaired, or lost any rights against the carrier on account of loss to property. It is apparent, since the writing of August 18, 1932, in and of itself, does not provide the basis for a finding of a violation of the policy, that the trial judge, in support of that finding, relied on the evidence as to the oral negotiations between Saxe and Wing.

The rule that written agreements may not be varied or added to by parol evidence of antecedent or contemporaneous negotiations is not one merely of evidence, but is a rule of substantive law. *Goldenberg* v. *Taglino*, 218 Mass. 357, 359. *Goldband* v. *Commissioner of Banks*, 245 Mass. 143, 150. Before that rule comes into operation, however, the court must be sure that it has before it a written contract intended by the parties as a statement of their complete agreement. *Welch* v. *Bombardieri*, 252 Mass. 84, 87.

The plaintiff contends that the writing of August 18, 1932, was a written contract between Wing and Saxe individually, and not on behalf of the plaintiff corporation. Assuming the plaintiff's contention on this branch of the case, there is, nevertheless, evidence from which it could be found that Wing transported goods after July 1, 1932, under an oral contract entered into by Wing and by Saxe acting on behalf of the plaintiff; that under that agreement, Wing was to pay the premiums on the insurance policy here in suit, said policy covering the plaintiff corporation; that when Saxe told Wing that the latter would be protected by the insurance policy, he was then referring to the policy here in suit; and that he was then acting on behalf of the corporation. This is shown by his words "In paying the premium that protects you and it protects me." It would seem obvious that in so talking about the policy here in suit, Saxe was identifying himself with the corporation, and speaking in its behalf, since the policy protected not him but the corporation. He could not give Wing any benefits under that policy, unless he was speaking for the corporation. If, therefore, it be true, as the plaintiff contends, that Saxe signed the writing of August 18, 1932, as an individual, there were two

contracts in existence, an oral contract between the plaintiff and Wing, and a written contract between Saxe and Wing. As to the plaintiff, therefore, the written agreement between Saxe and Wing was *res inter alios acta* and would not affect the agreement between the plaintiff and Wing unless it was shown to have been intended to do so. *Brown* v. *Frederick J. Quinby Co.* 204 Mass. 206, 211. *Wilson* v. *Mulloney*, 185 Mass. 430, 433. Although in the case at bar there may be an implication arising from the writing that certain provisions of the oral contract were intended to be affected thereby, it cannot be ruled as matter of law that the oral agreement as to benefit of insurance was intended to be affected thereby. *Picard* v. *Beers*, 195 Mass. 419, 428. It follows that there is no difficulty in allowing findings to be based on the evidence as to the oral agreement between the plaintiff and Wing.

Assuming, however, as could have been found from evidence that the corporation paid for the trucking done under the writing and from the other evidence, that Saxe in signing the writing was making an agreement for the corporation (*Bank of British North America* v. *Hooper*, 5 Gray, 567, 570, 571; *Feinberg* v. *Poorvu*, 249 Mass. 88, 93) the plaintiff's contention that evidence of the oral understandings could not be relied on does not necessarily follow. The writing of August 18, 1932, is very short, and apart from setting forth rather fully a schedule of prices to be paid for the transportation of various articles, it does not appear to attempt to cover in any detail the ordinary elements of a contract of carriage, but is consistent on its face with the theory that it was only a memorandum as to one phase of the prior existing contract. *Thomas* v. *Barnes*, 156 Mass. 581, 583; *Caulfield* v. *Motor Specialties Co.* 245 Mass. 420, 426. At the time of the execution of the writing, Wing was already working for the plaintiff under an oral contract with the latter. Except as to the change in the amount to be paid Wing, there is nothing on the face of the writing to indicate other change in or termination of the prior oral agreement. *Picard* v. *Beers*, 195 Mass. 419, 427, 428; *Woolf* v. *Ashman*, 281 Mass. 543, 544, 545. The

change in the method of paying Wing was a sufficient reason for the execution of the writing. The only mention in the writing of any insurance is contained in a short sentence stating that Wing was to pay the premium on a policy of insurance. The agreement is silent as to whether the plaintiff, Wing, or both were to receive the benefit of insurance. *Jackson Co.* v. *Boylston Mutual Ins. Co.* 139 Mass. 508, 510. It follows, therefore, that a finding that the writing contained only a part of the agreement would have been warranted. In such circumstances oral evidence was admissible to show the remainder of the contract. *Glackin* v. *Bennett,* 226 Mass. 316, 319. *McClintic-Marshall Co.* v. *Freedman,* 274 Mass. 558, 563. Compare *Deshon* v. *Merchants' Ins. Co.* 11 Met. 199, 206. Evidence as to the agreement to give Wing the benefit of insurance could also have been found to be admissible as an independent oral agreement, which neither controlled nor varied the writing. *Snow* v. *Alley,* 151 Mass. 14, 16. *See* v. *Downey,* 256 Mass. 47, 51.

Even if it be assumed that the writing stated the whole agreement of the parties, the writing as to the policy was ambiguous in that it neither identified a particular policy, nor described a type of policy. When the language of a writing is ambiguous by reason of unexpressed terms, resort must be had to extrinsic evidence to determine the meaning and extent of the language employed. *Hebb* v. *Welsh,* 185 Mass. 335, 336. Evidence would be admissible, on that theory, to show that Wing was to pay the premium on an insurance policy, in form covering the plaintiff, upon the condition that the benefit of the policy was to inure to Wing. *Adams* v. *Morgan,* 150 Mass. 143, 148. *Way* v. *Greer,* 196 Mass. 237, 245.

It follows that there was no error in considering the agreement between the plaintiff and Wing as to benefit of insurance. It is clear that the latter agreement was a violation of the policy which forbade the giving to the carrier benefit of insurance or the impairing of any rights of the insured against the carrier. *Jackson Co.* v. *Boylston Mutual Ins. Co.* 139 Mass. 508, 510, 511, 512. By the terms of the

policy, therefore, the agreement between the plaintiff and Wing rendered the policy null and void. *Hartford Fire Ins. Co.* v. *Payne*, 199 Iowa, 1008, 1012. It is unnecessary to consider other rulings of the trial judge on the question of proof of loss because any error committed therein would be immaterial and not reversible error. Under the terms of the report, therefore, the finding for the defendant is to stand.

*Judgment for the defendant.*