Frederick J. Kelley *vs.* Elsa N. Arnold.

Bristol.    October 23, 1950. — December 29, 1950.

Present: Qua, C.J., Lummus, Ronan, Spalding, & Williams, JJ.

*Evidence,* Extrinsic affecting writing.    *Contract,* Construction.    *Equity Pleading and Practice,* Master: reference.

In an order of reference to a master in the usual form under Rule 86 of the Superior Court (1932), an added provision naming a person as "appointed commissioner to report the evidence" was irregular; it was doubtful whether such provision had the effect of an order that the evidence before the master be reported.

In a written contract primarily for the sale and purchase of the shares of stock and merchandise of a corporation conducting a store, a provision that the seller should transfer the shares to two purported purchasers "who shall own the said shares of stock equally" was not intended by the two as a complete statement of the agreement between themselves respecting the shares, and, in a suit between them involving their respective rights to the proceeds of a subsequent sale by them of the shares and merchandise, it was proper to enter a decree in accordance with findings based on parol evidence that at the time of the purchase by them the defendant had furnished their entire investment in the store and it had been agreed between them in effect that the plaintiff should not be the beneficial owner of the shares then taken in his name until he should have reimbursed the defendant for one half of the investment.

Bill in equity, filed in the Superior Court on December 17, 1948.

The suit was heard by *Fairhurst,* J., upon a master's report.

*L. E. Perry,* (*W. B. Perry, Jr., & E. D. Hicks* with him,) for the plaintiff.

*J. R. Wheatley,* for the defendant.

SPALDING, J.   The plaintiff seeks by this bill in equity
to recover from the defendant the sum of $11,700 as his
share of the proceeds from the sale of the shares of stock of
Corner Package Store, Inc.   The case was referred to a
master and his report was confirmed by an interlocutory
decree.   An interlocutory decree was also entered over-
ruling (with an exception not here material) the exceptions
to the report.   Thereafter a final decree was entered dis-
missing the bill.   From these decrees the plaintiff appealed.

The following is a summary of the pertinent findings of
the master:  In the summer or fall of 1946 the defendant
told the plaintiff, whom she had known for about a year,
that she desired to purchase a package store.   Late in Octo-
ber of that year the plaintiff learned that a package store in
New Bedford known as Corner Package Store, Inc., was for
sale and so informed the defendant who, after looking at it,
agreed to buy it.   The purchase price was $25,000 and an
additional sum was to be paid for the merchandise at in-
ventory value at the time of the transfer.   The defendant
offered to employ the plaintiff as manager of the store and
promised that in addition to his salary he would be "a half
owner" as soon "as the store paid for itself."   The plaintiff
agreed to this proposition.   The plaintiff then had a pur-
chase and sale agreement drawn up which, among other
things, provided that the sellers were to turn over the stock
of the corporation (Corner Package Store, Inc.) to the pur-
chasers (the plaintiff and the defendant) "who shall own
the said shares of stock equally, 50 per cent thereof being
owned by said Elsa Arnold, and 50 per cent thereof being
owned by said Frederick J. Kelley."   The agreement, which
was dated November 23, 1946, was carried out by the par-
ties.   In all the defendant invested $33,000 in the enter-
prise.

The plaintiff and the defendant were elected president
and treasurer respectively of the corporation.   They were
also directors.   The record books show that the officers and
directors were elected early in January, 1947, "upon mo-
tion of Elsa N. Arnold, new owner of 50 per cent of the out-

standing stock in said corporation, seconded by Frederick J. Kelley, new owner of 50 per cent of the stock of said corporation." Thereafter two stock certificates for fifteen shares each, representing the outstanding stock of the corporation, were made out in the names of the plaintiff and the defendant and were placed in a strong box at the store. "The plaintiff's certificate was voluntarily signed by the defendant and given to . . . [the plaintiff] because of their mutual friendship and trust and in reliance upon their agreement that one half of the profits should be applied as payment until the plaintiff had paid one half of the investment."

The plaintiff was manager of the store from December 9, 1946, until it was sold in February, 1948, and was paid a salary of $65 a week. During this period no dividends were paid on the stock and down to December 31, 1947, the corporation had operated at a loss. In February, 1948, the plaintiff and the defendant sold the shares of stock of the corporation and its inventory to Manuel and Joseph Ferreira and Joseph Batista. The proceeds of the sale ($29,555.64) were received by the plaintiff who turned them over to the defendant. The "plaintiff had legal title to one half the shares of stock of the corporation, but these shares had not been paid for in accordance with the agreement of the plaintiff and defendant . . . and it was for this reason that the plaintiff turned over the full sale price to the defendant without making any claim that any part of it was his money." On December 1, 1948, approximately nine months after the sale, the plaintiff wrote to the defendant demanding one half of the proceeds of the sale.

The judge who entered the decrees appealed from filed in connection therewith a "Memorandum of Finding of Facts, Ruling of Law and Order for Decrees" in which he stated, "From the facts reported by the master, I draw the inference and find as a fact . . . that even though it was agreed by the parties that they shall 'own the said shares of stock equally,' and even though the plaintiff had 'legal title to one half the shares of stock of the corporation' the plaintiff had not furnished the agreed upon consideration

therefor." See *Prudential Trust Co.* v. *McCarter*, 271 Mass. 132, 139, and cases cited.

The order of reference here is irregular and is not to be commended. The first part of it is in the usual form (see Rule 86 of the Superior Court [1932]) and orders the master "to hear the parties, find the facts and report his findings to the court, together with such questions of law, arising in the course of his duty, as any party may request." The order then states, "Ida Coppinger appointed commissioner to report the evidence." It may be doubted whether the sentence last quoted had the effect of an order to report the evidence before the master. In a case tried before a judge the appropriate method of having the evidence reported is for the court to designate a "stenographer or other person" to report the evidence. Rule 76 of the Superior Court (1932). G. L. (Ter. Ed.) c. 214, § 24, as amended. But the statute and the rule have no application to hearings before masters and auditors. Of course, a judge may order the evidence before a master reported. But that is seldom done. *Shelburne Shirt Co. Inc.* v. *Singer*, 322 Mass. 262, 265. Inasmuch as the master, the judge who entered the decrees, and the parties have proceeded on the assumption that the evidence is reported, we are disposed, without intending to create a precedent, to deal with it on that basis. We reach this conclusion the more readily because without resort to the evidence it would be doubtful whether the question presented by the appeal would be before us since it would not appear from the master's report.

The plaintiff contends that the rights of the parties with respect to the ownership of stock in the corporation were completely set forth in the purchase and sale agreement of November 23, 1946, and that under its provisions the plaintiff and the defendant "own the said shares of stock equally." Accordingly, it is argued, the master erred in basing his findings concerning the agreement of the parties on parol evidence. It is conceded, and the evidence shows, that the conclusions of the master relating to the agreement

were based on evidence outside of the agreement. No contention is made that these findings are unsupported by the evidence if parol evidence could be considered. The sole question for decision is whether the master had the right to ground his findings on such evidence.

There was no error. The agreement of November 23, 1946, was not intended by the plaintiff and the defendant as a complete statement of their agreement inter se. It was primarily an agreement between the sellers of the store on one side, and the purchasers, the plaintiff and the defendant, on the other side. The reference in the agreement to the equal ownership of the stock was incidental; it did not purport to set forth in full the rights of the plaintiff and the defendant with respect to the stock. Before the parol evidence rule comes into operation "the court must be sure that it has before it a written contract intended by the parties as a statement of their complete agreement." *Kesslen Shoe Co. Inc.* v. *Philadelphia Fire & Marine Ins. Co.* 295 Mass. 123, 129. *Maybury Shoe Co.* v. *Izenstatt*, 320 Mass. 397, 403–404. *Freeman* v. *Sieve*, 323 Mass. 652, 654. The master, therefore, did not err in basing his findings on evidence other than the purchase and sale agreement.

*Interlocutory decrees affirmed.*
*Final decree affirmed with costs.*