JOHN MANGANARO & another *vs.* LOUIS R. DESANCTIS
(and a companion case[1]).

Suffolk. May 4, 1966. — June 10, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Partnership,* Misuse of partnership property, Accounting, Partnership agreement. *Evidence,* Extrinsic affecting writing. *Equity Pleading and Practice,* Costs; Master: filing of report; Judicial discretion.

---

[1] Irwin Springer, receiver, *vs.* Louis R. DeSanctis.

In a suit in equity by the receiver of a partnership against one of the partners to recover money allegedly due the partnership, a master's concluding finding for the plaintiff was based on the supportable construction of a transaction as amounting to a use by the defendant for his own purposes of money borrowed by him in the name of the partnership from a bank, and such finding, together with the master's express findings and appropriate inferences therefrom, warranted a final decree for the plaintiff. [110]

Allegations in a bill in equity for an accounting by two of three partners engaged in the lathing and plastering business against the third partner, that the defendant "for his own personal advantage" had been "depleting the assets of the partnership by charging the partnership excessive and unreasonable amounts for" materials sold to it from his own independent business and had made "unconscionable and secret profits . . . in furnishing" such materials, put in issue the propriety of the defendant's charges, and an oral agreement by the defendant with the plaintiffs "prior to" and "at or about" the time the parties entered into the partnership, that the defendant would sell materials to the partnership at prices less than the current prices, might properly be considered in determining the propriety of his actual charges. [111]

Where two of three partners brought a suit in equity for an accounting of the partnership business against the third partner, a receiver was appointed, and a master computed amounts due the plaintiffs from the defendant, there was no error in a final decree based on such computations where neither the receiver nor the defendant suggested that the judge adopt an alternative finding by the master that the defendant owed the partnership or the receiver a sum approximately the aggregate of the sums owed the plaintiffs individually. [112]

Partners entitled to an accounting in a suit in equity against another partner were as a matter of law not entitled to recover from the defendant counsel fees incurred by the plaintiffs in prosecuting that very suit. [112]

In a suit in equity heard on a master's report which was filed three years after the hearings before him had been concluded and which contained substantial awards of money to the plaintiffs against the defendant together with large amounts of accrued interest, there was no abuse of discretion in a denial of a motion by the defendant to discharge the rule to the master. [112–113]

Two BILLS IN EQUITY filed in the Superior Court on December 1, 1955, and September 27, 1956, respectively.

The suits were heard by *Forte, J.,* on a master's reports.

*Francis E. Dooley, Jr. (Brian J. Moran* with him) for the defendant.

*Francis H. Farrell (Irwin Springer* with him) for the plaintiffs.

WHITTEMORE, J.   Three cases that were related to a partnership known as Manganaro Brothers, and its business,

were referred to the same master. Appeals by Louis R. DeSanctis, the defendant in two of the cases, bring those two cases before us for review. The plaintiffs in one of those cases have also appealed from the disallowance of counsel fees.

John and Leo Manganaro, brothers, and DeSanctis executed a formal partnership agreement under the name of Manganaro Brothers dated December 2, 1950. DeSanctis in late 1949 or 1950 had joined the brothers in their lathing and plastering business as the partner to be in charge of financing and accounting. He was to assist in expansion plans, furnish a line of credit and money to meet payrolls, and keep the books and records in a building where he conducted other businesses. The partnership business continued until the summer or fall of 1955, when, due to defalcations and breaches of duty of DeSanctis, it became insolvent and at that time ceased to do business except for the completion of several outstanding contracts. The brothers on December 1, 1955, brought a bill for dissolution and an accounting and the appointment of a receiver. A receiver was appointed and in due course he brought against DeSanctis a suit for the recovery of sums due the partnership. The final decree in that proceeding adjudged due $13,099.50 with interest to date of decree, a total of $20,844.57. The final decree in the proceeding for an accounting adjudged due to John Manganaro, $35,009.03 with interest, a total of $55,708.07; and to Leo Manganaro, $36,209.39 with interest, a total of $57,618.22.

## The Receivership Case.

In 1955 Manganaro Brothers had subcontracts for lathing and plastering on two jobs in Boston, one at the Boston State Hospital and the other at the Dorchester School. Prior to the making of these subcontracts, DeSanctis had begun doing a lathing and plastering business as Acme Lathing and Plastering Co. (Acme). On November 4, 1955, he borrowed $11,000 from the Malden Trust Company in the name of Manganaro Brothers pledging partnership ac-

counts in the amount of $15,081.30. "[T]his $11,000.00 was used to finance the work, that is labor and materials, at the Boston State Hospital job, which job was, after December 12, 1955, finished by . . . DeSanctis d/b/a Acme . . ., and . . . he received all the proceeds from this contract." The obligation to the bank was paid by the pledged collateral. DeSanctis, on the hospital job used, and claimed as the property of Acme, material and equipment of Manganaro Brothers of the value of $1,835.50, and on the school job used and retained as his own partnership property of the value of $266.

These findings support the decree. Nothing required recommittal for further findings. It was not necessary that the master find explicitly that the $11,000, or part of it, was not used to pay partnership debts on the hospital job. Nor was the master required to include in his subsidiary facts "circumstances" of the stopping of the work, the finishing of the work by Acme, or the borrowing of the money. He was not required to state how creditors were defrauded. The master's concluding finding for $13,099.50 with interest is, we think, based on the supportable construction that in using the $11,000 for labor and materials on the hospital job, which he thereafter took over as his own, DeSanctis used the entire sum for his own purposes. Alternatively, we assume, the receiver could have proceeded for an accounting for the proceeds of the contract and a crediting and charging of all appropriate underlying items. He was not required to do this and the master's express findings, with appropriate inferences, support the award as the recovery of partnership money taken for the defendant's own use.

### The Bill for an Accounting.

1. The master found that "[p]rior to entering into the partnership agreement, and at or about the time the agreement was being executed, . . . [DeSanctis] agreed that he would sell the partnership from Day Square Builders Supply Co. [his own unincorporated business] the lathing and

plastering materials required at a price equal to ten per-
cent . . . less than a company of the size, type and kind of
Manganaro Brothers could purchase . . . [such material]
elsewhere . . . .'' A substantial part of the awards to the
brothers is based on breaches of this agreement. DeSanctis
earnestly objects that this allows recovery on a cause not
pleaded and on evidence barred by the parol evidence rule.
We disagree. The bill alleged that the defendant ''for his
own personal advantage'' had been ''depleting the assets of
the partnership by charging the partnership excessive and
unreasonable amounts for said goods and materials'' and
had made ''unconscionable and secret profits . . . in fur-
nishing [to it] goods and materials.'' This plainly put in
issue the propriety of DeSanctis's charges for any mate-
rials sold. The propriety of the charges was to be deter-
mined in the light of the agreement as to what they should
be. The agreement as to price of goods sold was not of
such a nature that it must be deemed merged in or excluded
by the partnership agreement. It is enough to quote from
Restatement: Contracts, § 240. ''(1) An oral agreement
is not superseded or invalidated by a subsequent or con-
temporaneous integration, nor a written agreement by a
subsequent integration relating to the same subject-matter,
if the agreement is not inconsistent with the integrated con-
tract, and (a) is made for separate consideration, or (b) is
such an agreement as might naturally be made as a sepa-
rate agreement by parties situated as were the parties to
the written contract.'' *Tompkins* v. *Sullivan,* 313 Mass.
459, 461. *Kelley* v. *Arnold,* 326 Mass. 611, 615.

2. DeSanctis contends that the report shows insufficient
basis for a conclusion of overcharges in specific amounts.
We see nothing in this. The master was not obliged to
make detailed findings such as now suggested. The master
found overcharges by separate years (confining himself
only to sales reflected on such records as were available),
stating the prices paid, the prices that would have been paid
had the purchases been from other dealers in Greater Bos-
ton and the amount of the overcharge based on a ten per

cent deduction from these figures. The evidence was not
reported. In response to objections the master set out certain evidence. This does not belie or weaken the findings.

3. The master did not fail to state an adequate account.
He computed the amounts due the brothers by including
overcharges in the category already noted, and other categories, as the equivalent of drawings by DeSanctis. Drawings in the name of the father of the brothers and DeSanctis's father were charged, respectively, to the brothers and
to DeSanctis. The drawings of the brothers were found
and stated. The account so stated showed much larger
drawings by DeSanctis and supported the principal sums
awarded in the final decree. The master then found: ''In
the alternate, if the Court finds that the money wrongfully
taken from the partnership by the respondent should be
paid to the partnership or the receiver thereof, I find that
the respondent, Louis R. DeSanctis, owes the partnership
or the receiver thereof, the sum of $106,827.63 plus interest
of $10,691.01 figured to the date of the Bill of Complaint for
a total of $117,518.64 with interest from the date of the Bill
of Complaint to the date of the Final Decree.''

It seems plain that if justice had required the adoption
of this alternative, it should have been availed of. There
being no suggestion, so far as appears of record, from the
receiver or DeSanctis for so doing, no error appears in
basing the decree on the account as first stated. The master found ''that there are no sums of money due and owing
from . . . [the plaintiffs] to the . . . [defendant], either
as a contribution for losses and obligations incurred by the
partnership, nor for any other reason.''

4. The master allowed counsel fees of $25,000. An objection thereto was sustained by the judge in the Superior
Court as matter of law. This was right. *Donaldson* v.
*Boston Herald-Traveler Corp.* 347 Mass. 274, 280–281, and
cases cited.

5. The judge did not err in denying the defendant's
motion to discharge the rule to the master. Hearings before the master began on March 27, 1961, and were con-

cluded on or about May 14, 1962.   Orders to the master to file his report, or modifications of such orders, were entered on May 23, 1962, October 29, 1962, December 3, 1962, April 30, 1964, April 21, 1965, and April 23, 1965.   The final report was filed on June 9, 1965.   DeSanctis stresses that the master's report as finally submitted was substantially based on the suggested findings submitted by the plaintiffs, with much of the language the same and the dollars and cents items and the method of computation in most instances identical.   He calls attention also to the large amount of accrued interest. . The delay in filing the report is a serious miscarriage of justice.   What to do about it lay in the discretion of the Superior Court.   We cannot say that the discretion was abused.   Offsetting the accumulated interest is the obvious consideration that the plaintiffs have not had their funds and the defendant has had them.   Retrial could only mean further delay.   A reasonable explanation of the correspondence between the report and the suggested findings is that on reflection and study the master found the suggested findings to be right.

CONCLUSION.

We have considered all the points argued by the defendant and discern no error in either case.   In both cases the entry is to be interlocutory and final decrees affirmed.

*So ordered.*